**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

UNITED STATES OF AMERICA

-vs-                                               Case No.:  2:06-cr-66-FtM-99SPC

JOSE EUGENIO GARCIA
_____

### REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

_____This matter comes before the Court on the Defendant Jose Eugenio Garcia's Motion to Suppress Search of Residence (Doc. # 34) filed on July 9, 2006.  The Motion was referred by the District Court to this Court on July 10, 2006.  On July 13, 2006, the Defendant requested a continuance (Doc. # 36) which was granted by this Court and the hearing was reset.  On August 9, 2006, a hearing was held before the Honorable Sheri Polster Chappell, United States Magistrate Judge.  At that hearing, the Government called Special Agent Steve Duquette, Sergeant Jay Rodriguez, and Deputy Carlos Mena as witnesses.  The Defendant presented no testimony or evidence at the hearing.

### TESTIMONY AND EVIDENCE

**Special Agent Steve Duquette:** (Tr. 4-23.)

Spc. Agt. Duquette has been a law enforcement officer for the past twenty (20) years and has served for the last nine (9) years with the Drug Enforcement Agency (DEA).  He testified to the events that occurred on May 18, 2006, at 3009 S.W. 28th Avenue (the residence) in Lehigh Acres.

Spc. Agt. Duquette received information indicating that the residence was involved in the cultivation of marijuana. On May 17, 2006, he conducted surveillance on the residence. (Tr. 5:18-25,

6:1-3.) At that time, he made contact with the Defendant who approached him and asked why he was driving down his street. (Tr. 6:1-13.) Spc. Agt. Duquette stated that at that time the Defendant communicated with him in English. (Tr. 6:9.)

On May 18, 2006, based upon what he had observed during surveillance and the information he had received on the residence, Spc. Agt. Duquette, Sgt. Jay Rodriguez, and Dep. Carlos Mena, stopped by the residence for a "knock and talk."[1] (Tr. 6:14-22.) Spc. Agt. Duquette testified he was identified as a law enforcement officer by the clothes he wore. (Tr. 7:1-7.) On the 18th, he was dressed in a DEA raid vest with a holstered firearm. (Tr. 8:23-25, 9:1.) He indicated that the others were dressed in a similar fashion. (Tr. 9:2-5.)

Spc. Agt. Duquette stated that they knocked on the front door which was opened by the Defendant. (Tr. 9:17-19.) The Defendant stepped out and the agents identified themselves and explained who they were and why they were there. (Tr. 9:19-25, 10:1-6.) Spc. Agt. Duquette testified that he could smell a strong odor of raw marijuana emanating from the residence when the door was opened. (Tr. 13:2-10.) According to Spc. Agt. Duquette, in addition to the Defendant, there were two females, another male, and a child in the residence at the time of the "knock and talk". (Tr. 13:19-25.) Spc. Agt. Duquette spoke with the Defendant in English but found that the Defendant's English was limited. Therefore, Sgt. Rodriguez spoke to the Defendant in Spanish and then related the conversation to Spc. Agt. Duquette. (Tr. 11:2-25, 12:1-11.) Sgt. Rodriguez asked the Defendant for consent to search which was given within half an hour, however, the Defendant

---

[1] A "knock and talk" is an investigative technique whereby an officer knocks on the door to a residence and attempts to gather information by explaining to the occupants the reason for the police interest. U.S. v. Norman, 162 Fed. Appx. 866, 869 (11th Cir. 2006).

-2-

refused to sign the Consent to Search Form. (Tr. 11:8-12, 15:2-7.) Spc. Agt. Duquette testified that the tone of the encounter was very conversational and that no voices were raised and no threats of any kind were made to coerce the Defendant's consent. (Tr. 15:17-25.)

**Sgt. Jay Rodriguez**: (Tr. 23-41.)

Sgt. Rodriguez currently serves with the Fort Myers Police Department (FMPD) and has been assigned to the DEA task force for the last year and a half. (Tr. 24:2-4.) On May 18, 2006, he participated in a "knock and talk" along with Spc. Agt. Duquette of the DEA. (Tr. 24:10-12.) He accompanied Duquette to the residence and knocked on the front door. (Tr. 24:17-25.) Sgt. Rodriguez testified that he smelled a strong odor of marijuana emanating from the residence. (Tr. 24:23-24.) He identified himself and explained why the officers were there and what they were doing. (Tr. 24:24-25.) The Defendant, in turn, identified himself and the others in the house. (Tr. 25:4-8.)

Sgt. Rodriguez spoke to the Defendant in Spanish with the Defendant occasionally using English. (Tr. 25:18-25.) However, Sgt. Rodriguez felt the Defendant was more comfortable using Spanish and therefore, he conversed with the Defendant in Spanish. (Tr. 26:1-2.) Sgt. Rodriguez testified that he explained consent to the Defendant. He explained that the Defendant could deny consent if he so desired or the officers could get a search warrant if necessary to search the residence. (Tr. 26:3-10.) Sgt. Rodriguez explained that if the Defendant gave consent, they would search the residence. (Tr. 26:11-18.)

During this time the Defendant's wife, young daughter, and female friend exited the residence and sat outside in the lanai area. (Tr. 26:19-23.) The Defendant actually gave his consent to search after about five to (5) ten (10) minutes but was attempting to negotiate conditions for the search which prolonged the actual search. (Tr. 29:4-10.) Sgt. Rodriguez said the Defendant was concerned

about his wife's presence and wanted his wife and child to enter the residence with them. (Tr. 27:20-25, 28:1-10. ) Sgt. Rodriguez informed the Defendant that his wife and child could not go inside the residence with them because it was a safety issue. (Tr. 28:18-23.) The Defendant then expressed that he only wanted Sgt. Rodriguez and Spc. Agt. Duquette to enter the residence but the officers wanted him to enter with them. (Tr. 29:11-16.) Again Sgt. Rodriguez explained that no conditions could be imposed on the search. (Tr. 29:11-18.) After about (20) to (25) minutes, the Defendant said "lets go inside." (Tr. 30:7-11.) The Defendant never said you can't go inside or no I don't want you to search. (Tr. 32:13-18.) Once inside the residence, the Defendant pointed out the marijuana grow operation. (Tr. 30:10-13.) The Defendant's wife was allowed back in the residence after the officers had discovered the marijuana grow operation. (Tr. 30:16-21.)

Sgt. Rodriguez testified that the entire encounter was conversational, there was no yelling, no threats, or coercion used to obtain the Defendant's consent. (Tr. 31:10-19.) Sgt. Rodriguez was dressed in jeans, boots, a black t-shirt, and mesh vest. (Tr. 33:11-16.)   He had his badge around his neck and his firearm in its holster. (Tr. 33:16-17.) He further testified that the Defendant's wife never complained about being uncomfortable due to her pregnancy while she waited outside. (Tr. 34:6-9.)

**Dep. Carlos Mena**: (Tr. 41-53.)

Dep. Mena works is a member of the Lee County Sheriff's Office (LCSO) and is assigned to the Combined Law Enforcement Against Narcotics "CLEAN" task force. (Tr. 42:3-7.) He testified to events that occurred during the "knock and talk" at the Defendant's residence on May 18, 2006.

Dep. Mena's original role in the "knock and talk" was to perform rear security with two other task force agents. (Tr. 43:1-6.) After not more than five (5) minutes he received the all clear and joined Spc. Agt. Duquette and Sgt. Rodriguez at the front door of the residence. (Tr . 43:11-22.)

-4-

Dep. Mena testified that he could smell the odor of marijuana emanating from the residence. (Tr. 46:5-6.) He stood by and listened to the conversation between Sgt. Rodriguez and then after about five (5) or ten (10) minutes of conversation between Sgt. Rodriguez and the Defendant, Dep. Mena spoke with the Defendant. (Tr. 46:13-25, 47:1-4.)

Dep. Mena testified he informed the Defendant of his rights in Spanish. He specifically told the Defendant of his right to refuse consent to enter. (Tr. 47:22-25, 48:1.) He told the Defendant that they were not there to force him but because of the overwhelming smell of marijuana coming from the residence, they could get a search warrant. (Tr. 47:2-9, 48:4-9.) According to Dep. Mena, the Defendant was mainly concerned about his wife who was pregnant. (Tr. 48:10-19.) He told Dep. Mena that he did not want the officers to tear up his house, that he just wanted two officers to enter the residence to perform the search, and further that he would prefer if his wife accompanied them. (Tr. 49:3-6.) Dep. Mena told the Defendant that was not possible. (Tr. 49:10-13.) At no time did the Defendant express that he did not want the officers to enter the residence, just that he was concerned about his wife. (Tr. 49:14-19.) Neither the Defendant nor his family were threaten with jail. (Tr. 51:23-25, 52:1-6.)

## DISCUSSION

The Defendant argues that his consent was not voluntary but coerced by the presence of police officers in DEA vests, that he was confused because the officers spoke to him in both English and Spanish during their conversation prior to his consent, and that concern for his pregnant wife and guests rendered his consent involuntary. The Government counters that the officers did not use coercion of any kind and that the Defendant's consent was voluntary. Thus, the only issue before the Court is whether or not the Defendant voluntarily gave his consent to search his residence.

*Whether the Defendant's Consent was Voluntary*

"The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects." Illinois v. Rodriquez, 497 U.S 177, 181, 110 S. Ct. 2793, (1990). Officers without a warrant or probable cause may conduct a search of a residence based upon the voluntary consent of the property owner. Schnecklin v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2042, 36 L.Ed.2d 854 (1973). In assessing voluntariness, the inquiry is factual and depends on the totality of the circumstances. U.S. v. Purcell, 236 F.3d 1274, 1281 (11th Cir. 2001). In order for consent to be deemed voluntary, it must be the product of an essentially free and unconstrained choice. U. S. v Garcia, 890 F. 2d 355, 360 (11th Cir. 1989). Factors in assessing voluntariness include: the Defendant's age, intelligence, education, and language ability; the Defendant's knowledge of his constitutional right to refuse consent; the degree to which the individual cooperates with the police, the Defendant's attitude about the likelihood of the discovery of contraband; and the length of the detention and nature of the questioning. Schneckloth, 412 U.S. at 226; Ramirez-Chilel, 289 F.3d at 752 (citing U.S. v. Gonzalez, 71 F.3d 819, 830-831 (11th Cir. 1996)). The Government bears the burden of proving the voluntariness of the consent. U.S. v. Chemaly, 741 F. 2d 1346, 1352 (11th Cir. 1984).

The Defendant did not contest whether his age, educational level, or intelligence came into play during the "knock and talk". Therefore, the Court will consider the issues of whether the Defendant submitted to apparent police authority, whether or not he was able to understand the process due to language issues, whether the consent was coerced, and whether or not length of the detention coerced his consent.

### *(a) Whether the Presence of Authority Intimidated the Defendant*

The Defendant initially argues that the police intimated him into giving consent because they wore firearms, DEA vests, and other law enforcement identification such as badges. However, the presence of a holstered firearm is not coercive absent the active brandishing of the weapon because it is well known by the general public that officers are armed. U.S. v. Drayton, 536 U.S. 194, 205, 122 S. Ct. 2105, 153 L. Ed. 2d 242 (2002) (citing Florida v. Rodriguez, 469 U.S. 1, 5-6, 105 S. Ct. 308, 83 L. Ed. 2d 195 (1984)).  Furthermore, the wearing of police uniforms such as the DEA vests and the display of a badge without more is not a sign of coercive behavior. U.S. v. Perez, 443 F3d 772, 778 n. 2 (11th Cir. 2006) (citing Drayton, 536 U.S. at 204- 205) (holding that officers' display of their badges, as well as the presence or lack of a uniform and holstered firearm all should have little weight in the analysis)).  In fact, the Supreme Court has held that the presence of an armed uniformed officer is a source of assurance and not discomfort. Id.  Thus, the Defendant's initial argument that the police intimated him into consent because they wore firearms, DEA vests, and other law enforcement identification such as badges is without merit.

### *(b) Whether the Defendant Understood the Consent to Search Process*

The Defendant also argues that the officers switched back and forth from English to Spanish and thereby confused the Defendant denying him the right to refuse consent.  In determining whether an individual has sufficient comprehension of English to provide voluntary consent, courts examine his ability to interact intelligently with police. U.S. v. Zapata, 180 F.3d 1237, 1242 (11th Cir. 1999) (citing U.S. v. Galvan-Muro, 141 F.3d 904, 907 (8th Cir. 1998).

In contrast to the Defendant's argument, Sgt. Rodriguez and Dep. Mena testified that they switched to Spanish from English because it was apparent that the Defendant was more comfortable

with Spanish. (Tr. 25:18-25, 26:1-2, 47:15-21.) It is clear from the testimony of Sgt. Rodriguez and Dep. Mena, that the officers relied almost exclusively on Spanish while conversing with the Defendant. Dep. Mena testified that he told the Defendant his rights in Spanish including his right to refuse to consent to the search if that was his desire. (Tr. 47:22-25, 48:1-9.) The fact that the Defendant entered into negotiations for twenty (20) to twenty-five (25) minutes regarding the terms and conditions he wanted imposed on the search demonstrates that he understood the issues surrounding the proposed consent to search. Accordingly, any language barrier suffered by the Defendant was sufficiently addressed by the officers and therefore, the Defendant's argument lacks merit.

### *(c) Whether the Defendant was Coerced into Consent*

The Defendant argues that he was coerced into consent because the police threatened his pregnant wife and guests with jail if he did not cooperate, and that if he did not grant consent the officers would obtain a search warrant for the residence. The testimony of the officers during the hearing refutes the Defendant's coercion argument. Sgt. Rodriguez testified that consent was given early in the encounter and that most of the conversation prior to actual search was spent discussing conditions the Defendant wanted imposed upon the search. (Tr. 29:4-10.) The Defendant was told by the officers that no conditions could be placed on the search and if the Defendant wanted to refuse because of the conditions, the officers could simply go and get a search warrant. (Tr. 26:3-10, 48:4-9.)

There was no evidence presented that the officers threatened the Defendant, his pregnant wife, or guests with jail, verbal threats, or physical harm. The undisputed testimony of all of the officers present at the time the consent to search was granted was that the entire encounter was

conversational. (Tr. 15:17-25, 31:10-15.)    Most of the twenty (20) to twenty-five (25) minutes of conversation that proceeded the search was spent in discussing the Defendant's conditions. (Tr. 29:4-10.)  Finally, the Defendant stated "let's go in." (Tr. 30:7-11.)  The Defendant's wife sat on the lanai with her friend and once the search was completed and the couches in the house checked for weapons, she was allowed to reenter the house and sit down. (Tr. 30:16-21.)

The absence of intimidation, threats, abuse (physical or psychological), or other coercion weighs in favor of upholding what appears to be a voluntary consent. Zapata, 180 F.3d at 1241.  The Eleventh Circuit has found that consent can still be voluntary despite officers' statements that they would not accept a suspect's conditional consent to search and in cases where officers have stated they would attempt to obtain a search warrant if full consent was not granted. Id. at 1242.  Therefore, based upon the totality of the circumstances, the Court concludes that the Defendant's consent to search was not coerced.

### *(d) Whether the Length of the "Knock and Talk" Coerced the Defendant's Consent*

In this case, the entire conversation prior to searching the residence lasted approximately twenty (20) to twenty-five (25) minutes and most of that time was spent discussing the Defendant's conditions and not the actual consent. (Tr. 29:4-10.) Twenty (20) to twenty-five (25) minutes is not a sufficient detention span to have broken down the Defendant's will and thereby invalidated the voluntariness of the consent. Thus based upon the surrounding circumstances, the testimony and evidence presented at the hearing, the Court respectfully recommends that the Motion to Suppress be denied.

Accordingly, it is now

**RECOMMENDED:**

The Defendant Jose Eugenio Garcia's Motion to Suppress Search of Residence (Doc. # 34) should be **DENIED.**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this   29th   day of August, 2006.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record